# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ROBERT M. ROGERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. 22-CV-11399-AK |
| v. | ) | |
| | ) | |
| UNUM LIFE INSURANCE COMPANY | ) | |
| OF AMERICA and UNUM GROUP, | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER ON PARTIES' MOTIONS FOR SUMMARY JUDGMENT

**ANGEL KELLEY, D.J.**

Plaintiff Robert A. Rogers, PhD ("Rogers") has filed this action to challenge Defendants Unum Life Insurance Company and Unum Group's (collectively "Unum") denial of Rogers' application for long-term disability benefits, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). [Dkt. 1-1 at 2]. Rogers suffers from a number of physical ailments and autoimmune diseases, along with behavioral health issues. [Dkt. 30 at ¶ 53]. He applied for, and received, the maximum, short-term disability benefits from his insurer, Unum. [Id. at ¶ 39]. However, Unum rejected his application based on the same medical conditions for long term disability benefits. [Dkt. 1-1 at 2]. Unum removed the matter from the Massachusetts, Middlesex County Superior Court in August of 2022 and now moves for summary judgment on all counts. [Dkts. 1, 22]. Unum argues that its robust evaluation process and ultimate decision to deny Rogers' disability benefits were not arbitrary and capricious. [Dkt. 23 at 16-20]. Rogers has opposed the Motion and likewise, moved for summary judgment on all grounds. [Dkt. 25]. Following an extensive review of the record, for the following reasons, Unum's Motion for

1

Summary Judgment [Dkt. 22] and Rogers' Motion for Summary Judgment [Dkt. 25] are

**DENIED WITHOUT PREJUDICE**.

## I.     BACKGROUND

In evaluating a motion for summary judgment, the Court relies on the parties' statements

of material facts, responses thereto, and any attached exhibits the parties have submitted.  The

Court accepts as true each material fact to the extent it has not been disputed by the opposing

party and considers contested each material fact that one or both parties has disputed.  Unless

otherwise noted, the facts below are undisputed.  Additionally, several facts are derived from the

administrative record, previously before the insurance plan administrator.

In 2020, Rogers was employed as a Senior Scientist at MKS Instruments, Inc.  [Dkt. 27 at

¶ 6].  He was covered by an employee benefit plan provided by his employer.  [Id. at ¶ 1].

### A.     Insurance Policy

Unum insured long-term disability benefits ("LTD benefits") and short-term disability

plans for employees of MKS Instruments, Inc. ("MKS") under the Policy.  [Dkt. 30 at ¶¶ 32, 34].

The plan is administered by the plan administrator.  Benefits are administered by the insurer

[Unum] and provided in accordance with the insurance policy issued [by Unum] to the Plan.  [Id.

at ¶ 33].

The plan provides that an active employee is disabled when the employee 1) is "limited

from performing the material and substantial duties [of his] regular occupation due to . . .

sickness or injury;" and 2) has a "20% or more loss in [his] indexed monthly earnings due to the

same sickness or injury."  [Dkt. 27 at ¶ 2].  To be eligible to receive benefits, an employee must

be "continuously disabled through [the employee's] elimination period."  [Id. at ¶ 3].  An

elimination period is a period of continuous disability required before an insured is able to

receive benefits from Unum.  [Dkt. 30 ¶ 5].  The period is 180 days or "the date your insured Short Term Disability payments end, if applicable," whichever is later.  [Dkt. 27 at ¶ 3]. Following 24 months of payments, an employee is disabled when Unum determines that the employee is unable to perform the duties of any gainful occupation due to the same sickness or injury.  [Id. at ¶ 2].

### 1.    Short term disability

Due to mixed connective tissue disease and several other health conditions, Rogers applied for and was approved by Unum for short term disability benefits on March 26, 2020. [Dkt. 30 at ¶ 35].  By letter dated May 6, 2020, Unum again, approved Rogers' short-term disability benefits, and then again on July 24, 2020.  [Id. at ¶¶ 36, 37].  Unum ultimately approved the 26-week, short-term disability based on the medical records and information provided by Rogers' doctors, Norren Ferrante, MD, and John Chisholm, DO.  [Id. at ¶ 54].  A letter from Unum dated August 25, 2020, stated, "[y]our claim has been approved for benefit payment for the maximum duration of your employer's 26 week policy . . . .  Your claim is approaching a point where Short Term Disability benefits will end . . . ."  [Id. at ¶ 38].  Rogers received the maximum benefits available under the short-term disability plan administered by Unum.  [Id. at ¶ 39].  The letter stated Rogers' claim would be reviewed for long-term disability benefits as the next step.  [Dkt. 28-8 at 354].  It also indicated the requirements to apply for the long-term disability plan, which included, medical records from all treating providers from July

15, 2020, forward, and a list of restrictions and limitations of activities he was inhibited from doing.  [Dkt. 30 ¶ 41].

### 2.  Long term disability

Long-term disability may be granted where a claimant remains disabled through the elimination period, and provides proof of the following: 1) that claimant is under the regular care of a physician; 2) appropriate documentation of monthly earnings; 3) the date the disability began; 4) the cause of the disability; 5) the extent of the disability, including restrictions and limitations preventing job performance; 6) the name and address of the hospital or institution, and names of attending physicians.  [Dkt. 28-1 at 8].  In September of 2020, Unum began transferring Rogers' file from the short-term disability file to the long-term disability file.  [Dkt. 30 at ¶ 40].  Rogers' claim included medical records in support of a number of medical conditions and ailments that either limited or precluded him from performing his duties, according to his attending physicians.  [See id. at ¶¶ 53-81].  During May, September, and December of 2019, Rogers' attending physicians documented that Rogers continued to experience shoulder pain and suffer from "mixed connective tissue disease."  [Id. at ¶¶ 57-60].  In August of 2020, Rogers' doctor documented that his mixed connective tissue disease's activity increased since his last February visit.  [Id. at ¶ 61].  In October of 2020, his physician, Dr. Ferrante, documented "profound fatigue" as Rogers' "most limiting symptom" at the time, and that remaining on disability was "appropriate."  [Id. at ¶ 62].  At the time of his appeal, the other conditions listed in his record that prevented him from working included a history of

chronic cluster headaches, Reynaud's syndrome, rheumatoid arthritis, lupus, systemic sclerosis, chronic obstructive pulmonary disease, and polymyositis.  [Dkt. 28-7 at 106].

Rogers first applied for long term disability in September of 2020.  [Dkt. 28-2 at 7].  Unum denied his claim on December 22, 2020, concluding that Rogers failed to provide evidence that he was unable to perform the demands of his occupation due to "Mixed Connective Tissue Disease, chronic pain, and Emphysema . . . difficulty raising [his] left shoulder, confusion, brain fog, severe fatigue, arthritis in [his] left shoulder, left knee, ankle, and hands" along with myositis, skin lesions, cluster headaches, fevers, and difficulty with his hands.  [Dkt. 28-4 at 257-58].  The letter stated that Rogers was evaluated as a "Senior Scientist" and reviewed records from Rogers' attending physicians Dr. Noreen Ferrante, Dr. John Chisholm, Dr. Andrew Chapman, and Dr. Robert Tufo in light of the vocational consultant's findings.  [Dkt. 28-4 at 258].

Under Unum's process, when an applicant receives an adverse benefit determination, the applicant receives an explanation and basis for disagreeing or declining the opinions of: (1) the applicant's treating health care professionals or vocational professionals who have evaluated the applicant; (2) the advice of the applicant's medical or vocational professionals; and (3) any disability determination made by the Social Security Administration.  [Dkt. 30 at ¶ 88].  On May 8, 2021, Rogers appealed the December 22, 2020 determination.  [Id. at ¶ 18].  The appeals process included a vocational assessment of Rogers occupation [Id. at ¶ 19]; a new medical review conducted by Unum medical consultants including Dr. Scott Norris [Id. at ¶ 21], Dr. Peter Brown, an IME by a rheumatologist and Unum medical consultant, Dr. Ronald Rapoport, and others.  [Id. at ¶ 23].  In August of 2021, Unum affirmed its denial of Rogers long-term benefits. [Id. at ¶ 26].  It explained that the appeals medical consultant disagreed with Rogers' attending

physicians and described specific factors that did not support a finding of restrictions or limitations. [Dkt. 28-8 at 281]. It also discussed the IME results indicating that Rogers was capable of the light work[1] defining his occupational duties, and that Unum's policy defined his occupational duties as they are defined nationally, and not what Rogers actually did for his employer. [Id. at 282]. Four months after Unum's decision, Rogers' attorney sent Unum a letter from the Social Security Administration ("SSA") stating that Rogers qualified for disability benefits through the SSA. [Dkt. 30 at ¶ 27].

In April of 2022, Rogers provided Unum with a vocational assessment report prepared by Rhonda Jellenek. [Id. at ¶ 28]. Her report indicated that Rogers' duties required medium work and concluded that Rogers had been "unable to perform the material duties" of this occupation since February of 2020. [Dkt. 28-9 at 325,354, 361]. In response to her report, Unum conducted another vocational review in May of 2022, finding that the additional information provided by the report did not alter the conclusions of the original June 2021 vocational review. [Dkt. 30 at ¶ 29]. Unum then had another medical consultant, Dr. Norris, review Rogers' file. [Id. at ¶ 30]. Norris' March 25, 2022 report concluded his prior opinion that the evidence did not support restrictions or limitations due to Rogers' conditions "would have precluded him from performing full time light occupational activity" from April 29, 2020 through August 20, 2020. [Id.].

### B. Vocational Assessments

Unum conducted a vocational assessment as a part of the appeals process. [Id. at ¶ 19]. The vocational assessment for Rogers included the consideration of two job descriptions, a work experience and education questionnaire, information provided by Rogers through a telephone

---

[1] Unum defines light work for the senior scientist position to be exerting up to 20 pounds of force occasionally, 10 pounds of force frequently or a negligible amount constantly to lift, carry, push, or pull objects; frequent sitting; occasional standing, walking, reaching, handling, fingering, keyboard use; occasional feeling or use of touch. [Dkt. 28-4 at 57].

call and a written statement, and his resume.  [Id. at ¶ 19].  At the time his long-term disability

claim was first opened in September of 2020, Rogers was classified as a Senior Scientist with an

occupation requiring "light work."  [Dkt. 28-2 at 4].  Unum initially identified Rogers as a

chemist, however, later identified him as a "material scientist" based on the vocational

information presented in Rogers' May 2021 appeal.  [Dkt. 28-9 at 364].  Unum conducted a

vocational review on June 18, 2021, where it determined that Rogers' position required light

work.  [Dkt. 30 at ¶ 8].  Rogers' second appeal package included a vocational review completed

by Jellenek in April of 2022.  [Id. at ¶ 28; Dkt. 28-9 at 364].  She concluded that Rogers'

position as a senior scientist required medium work, a designation that demanded increased

physical exertion and hands-on activity, particularly due to a duty Rogers carried out called,

"material failure analysis."  [Dkt. 28-9 at 347, 351].  Jellenek addressed Unum's June 18, 2021

vocational review directly by providing support for why material failure analysis and the

advancement of technology requires scientists to engage in hands-on work that is medium in

nature.  [Id. at 347, 351, 353].  She also concluded that Rogers had been "unable to perform the

material duties" of this occupation since February of 2020.  [Id. at 354].  Following Jellenek's

report, Unum conducted another vocational review in May of 2022 that indicated that the

scientist position required "[l]ight capacity" in terms of work demands, confirming the previous

June 18, 2021 conclusion.  [Dkts. 30 at ¶ 29; 28-9 at 364].  The analysis did not address any of

the arguments presented in Jellenek's evaluation with regard to hands on requirements or the

physical requirements concerning the material failure analysis.  [Dkts. 27 at 12; 30 at 11].

However, the May 31, 2022 final determination letter addresses these points, indicating that

Unum's policy only requires it to review Rogers' "occupation as it is normally performed in the

national economy, instead of the work tasks" that he actually performed at a particular location for a specific employer.  [Dkt. 28-9 at 379].

### C.  Regulatory Settlement Agreement

In 2004, Unum entered into a Regulatory Settlement Agreement ("RSA") with the U.S. Department of Labor and nearly 50 state insurance regulators to make changes to its processes. The amended agreement, dated in October of 2005, "contained provisions regarding giving significant weight to the attending physician's opinion."  [Dkt. 30 at ¶ 101].  Specifically, under this Amendment, significant weight is to be given when an attending physician "is properly licensed and the claimed medical condition falls within the attending physician's customary area of practice" unless the opinion lacks support by "medically acceptable clinical or diagnostic standards and is inconsistent with other substantial evidence in the record."  [Id. at ¶ 103].  For Unum to reject the attending physician's opinion, "the claim file must include specific reasons why the opinion is not well supported by medically acceptable clinical or diagnostic standards and is inconsistent with other substantial evidence in the record." [Id.].  The Benefits Center Claims Manual reflects the Amendment, requiring "[s]ignificant weight will be given to the opinion of an AP/HCP who is properly licensed and the claimed medical condition falls within the [attending physician's] customary area of practice . . . ."  [Id. at ¶ 104].

### D.  The May 31, 2022 Final Determination Letter

On May 31, 2022, Unum provided Rogers with a final determination letter denying his request for long-term benefits and refers Rogers to the August 18, 2021 letter that explains Unum's decision.  [Dkt. 28-9 at 376].  The May 31, 2022 letter concludes that Rogers is not disabled and that he is capable of executing his occupational duties.  [Id.].  It then summarizes the conclusions it relied upon to make its determination, including: 1) the Unum appeals

physician, Brown's conclusion that the newly discovered psychiatry records did not indicate a need for restrictions or limitations; 2) Unum's medical consultant, Dr. Rapoport's July 2021 Rheumatology IME report that concluded Rogers had the capacity to perform "full-time light work" during February 14, 2020 through August 20, 2020;  3) Unum's Appeals Vocational Rehabilitation Consultant's conclusion that Rogers' position as a scientist requires light work based on a review of the position "across the vocational rehabilitations resources."  [Id. at 377-378].  Additionally, Unum considered the file submitted to the Social Security Administration in which the SSA rendered Rogers disabled and granted disability benefits beginning February 14, 2020.  [Id. at 377].  Unum's letter asserts that the SSA considered records not previously before Unum, did not complete a "Physical Residual Functional Capacities" assessment or identify any specific restrictions or limitations based on Rogers' abilities, and did not complete a vocational assessment.  [Id. at 377].

## II.    LEGAL STANDARD

The review of an ERISA matter requires a court to be "confined to the administrative record before the ERISA plan administrator . . . ."  Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 518 (1st Cir. 2005).  This review places the district court in a position more akin to "an appellate tribunal than . . . a trial court." Leahy v. Raytheon Co., 315 F.3d 11, 18 (1st Cir. 2002). The court "does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary." Id.  Accordingly, "summary judgment is simply a vehicle for deciding the issue." Orndorf, 404 F.3d at 517.  "The district court does not determine whether there are genuine issues of material fact such that the case should be put before a fact-finder, but instead 'evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary.'" Host v.

First Unum Life Ins. Co., 569 F. Supp. 3d 48, 54 (D. Mass. 2021) (quoting Leahy, 315 F.3d at 18).  Within this context, "the non-moving party is not entitled to the usual inferences in its favor."  Orndorf, 404 F.3d at 517 (citing Liston v. Unum Corp. Officer Severance Plan, 330 F.3d 19, 24 (1st Cir. 2003)).

Rather, where there is a plan administrator or fiduciary with the discretion to decide eligibility for benefits, that decision must be upheld, unless the record demonstrates it was "arbitrary, capricious, or an abuse of discretion."  Host, 569 F. Supp. 3d at 54 (quoting Tracia v. Liberty Life Assurance Co. of Bos., 164 F. Supp. 3d 201, 219 (D. Mass. 2016)).  The deference provided to plan administrators is not however a "rubber stamp," Wallace v. Johnson & Johnson, 585 F.3d 11, 15 (1st Cir. 2009), and must consider whether the decision is "plausible in light of the record as a whole, or, put another way, whether the decision is supported by substantial evidence in the record."  Colby v. Union Sec. Ins. Co. & Mgmt. Co. for Merrimack Anesthesia Assocs. Long Term Disability Plan, 705 F.3d 58, 61 (1st Cir. 2013) (internal quotations omitted) (quoting Leahy, 35 F.3d at 17).  Ultimately, in deciding a motion for summary judgment, the court must determine whether reasonable minds could differ as to whether the plan administrator's decision was arbitrary, capricious, or an abuse of discretion.  Caola v. Delta Air Lines, Inc., 35 F. Supp. 2d 47, 51 (D. Mass. 1999).

## III.  DISCUSSION

Unum moves for summary judgment on the basis that the plan administrator's decision is "reasoned and supported by substantial evidence" in the record and is not arbitrary and capricious.  [Dkt. 23 at 15-16].  Rogers opposes Unum's Motion and separately moves for summary judgment on grounds that Unum abused its discretion because it denied Rogers' benefits in spite of 1) remaining impaired after receiving short-term disability benefits; 2) the

recommendations of Rogers' treating physicians; 3) determining within the same timeframe that Rogers required "indefinite leave" concerning FMLA while denying long-term disability benefits; 4) the award of social security benefits for the same medical conditions, during the same time frame as the long-term disability application before Unum; and 4) Rogers' vocational expert's conclusion that Unum's occupational classification was wrong.  [Dkt. 26 at 1-2].

In determining whether Unum's decision was arbitrary and capricious, the court "is not to substitute its judgment for that of the [decision maker]."  Petrone v. Long Term Disability Income Plan for Choices Eligible Emps. Of Johnson & Johnson & Affiliated Cos., 935 F. Supp. 2d 278, 292 (D. Mass. 2013) (alteration in original) (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins., 463 U.S. 29, 43 (1983)).  It not only considers what was in the administrative record before the fiduciary, but also the arguments and evidence presented in the final benefit determination letter dated, May 31, 2022.  Id. at 293.  The record must indicate, however, that the fiduciary or administrator at least considered and addressed contrary evidence. See Petrone, 935 F. Supp. 2d at 293 ("[T]he administrator cannot simply ignore contrary evidence, or engage with only that evidence which supports [their] conclusion.").  Whether Unum included all the arguments and evidence presented before this Court in the final benefit determination letter is a matter of notice for the applicant that is harmonious with ERISA's requirement that "specific reasons for the denial be articulated to the claimant."  Glista v. Unum Life Ins. Co. of Am., 378 F.3d 113, 130 (1st Cir. 2004); see 29 U.S.C.A. § 1133 (the beneficiary must be provided "adequate notice" in writing of the "specific reasons" for which his claim was denied "in a manner calculated to be understood by the participant").  Importantly, especially considering the sheer volume of medical opinions in the record before the Court, the mere "existence of contradictory evidence" in the record does not, in itself, render the decision

arbitrary and capricious.  <u>Vlass v. Raytheon Emps. Disability Tr.</u>, 244 F.3d 27, 30 (1st Cir. 2001).

Here, the period of interest for determining whether Unum's denial of long-term benefits was arbitrary and capricious is the elimination period, February 14, 2020, through August 20, 2020, as stated by the May 31, 2022 determination letter.  [Dkt. 28-9 at 376].  This elimination period overlapped with the 26-week period where Unum determined Rogers was disabled and required short-term disability—meaning, by Unum's standards, Rogers was "limited from performing the material and substantial duties of his regular occupation"[2]—in March 26, 2020 through August of 2020 when he maxed out his benefits.  [Dkt. 30 at ¶¶ 35, 39].  Contrary to this determination—and similar findings of disability by SSA, Unum's FMLA division, and Rogers' attending physicians' recommendations—Unum's medical consultants concluded for the purpose of long-term disability benefits that Rogers was capable of doing his job.  The Court must now determine whether Unum's actions were reasonable.

### A.    Unum's Reliance On Medical Consultants

Throughout the process of determining whether Rogers qualified for long-term benefits, Unum utilized medical consultants:[3] Stephen J. Kirsch, MD, Donna Kim, MD, Arlen Green, MD, Scott B. Norris, MD, and Ronald Rapoport, MD—only one of which were licensed to practice in the state of Massachusetts.  [Dkt. 30 at ¶ 107].  These professionals were tasked with reviewing Rogers' extensive medical record and the recommendations of his attending physicians: Andrew Chapman, MD, Noreen Ferrante, MD, John Chisholm, MD, and Robert Tufo, MD.  Additionally, Unum medical consultant, Dr. Rapoport, conducted a physical

---

[2] [Dkt. 30 at ¶ 1].

[3] Rogers lists Prerna Jain as a medical consultant for Unum, however, the record does not reflect his assertions as to her position, involvement or credentials.  Additionally, Unum disputed all material facts pertaining to Jain.

examination of Mr. Rogers in addition to his record review.  The RSA becomes relevant here

when considering the varying medical opinions and whether Unum acted reasonably in light of

its own policies that integrate and memorialize factors of the RSA concerning the weight given

to the attending physician's opinions.  [Dkt. 30 at ¶¶ 101-104].  Specifically, the Benefits Center

Claims Manual adopted the language (identified henceforth as the "Policy") that when evaluating

claims for long-term disability, "Internal medical resources" are expected to review a claimant's

medical information, providing that:

> significant weight [] be given to the opinion of an [attending physician]/HCP who
> is properly licensed and the claimed medical condition falls within the [attending
> physician's] customary area of practice, unless the [attending physician's] opinion
> is not well supported by medically acceptable clinical or diagnostic standards and
> is inconsistent with other substantial evidence in the record. In order for an
> [attending physician's] opinion to be rejected, the claim file **must include
> specific reasons why the opinion is not well supported by medically
> acceptable clinical or diagnostic standards and is inconsistent with other
> substantial evidence in the record**.

[Id. at ¶ 104].

Generally, when evaluating attending physicians' opinions and that of the insurance

company's medical consultants, courts have declined to determine how much weight should be

accorded to each opinion—especially with respect to opinions from examining versus non-

examining physicians.  See Gannon v. Metro. Life Ins. Co., 360 F.3d 211, 214 (1st Cir. 2004)

("[I]t is not for a court to determine . . . precisely how much weight [the insurer] should have

accorded [the non-examining physician's] opinion in its overall decision.").  In fact, the First

Circuit has declined to afford special deference to the opinions of examining physicians or

administrators.  See Richards v. Hewlett-Packard Corp., 592 F.3d 232, 239 (1st Cir. 2010) ("We

grant no deference to the administrators' opinions or conclusions."); Orndorf, 404 F.3d at 526

("The opinion of the claimant's treating physician, which was considered, is not entitled to

special deference.").  Not present in these cases is the issue of a benefits policy that requires substantial weight be given to attending physician's medical opinions, but for specified exceptions.  In determining whether it was reasonable for Unum to rely upon its medical assessments, the Court considers whether Unum followed its own policies as to the weight it afforded Rogers' attending physicians.  A failure to accord the proper weight to the opinions of the attending physician, pursuant to its Policy and obligations under the RSA, would be unreasonable and arbitrary and capricious.  Accordingly, as explained below, while Unum's medical consultants did explain their conclusions in general, their failure to explain why the attending physicians' conclusions did not meet the standard, nor identify inconsistencies, creates a dispute of fact as to whether it followed its own Policy by attributing the proper weight to the attending physician opinions.

### 1.  Attending Physicians

Rogers had four main attending physicians or medical professionals that diagnosed and treated him leading up to, and throughout the elimination time period (February 14, 2020 to August 20, 2020).  He argues that their respective diagnoses and recommendations should be given substantial weight, as required by Unum's Policy, as Unum failed to demonstrate any issues with credentials, specific reasons their respective opinion lacks support, and are inconsistent with other substantial evidence.  [Dkt. 30 at ¶ 104].  Each of the attending physicians concluded that Rogers conditions prevented him from carrying out his occupational duties due to restrictions or limiting factors.  Dr. Chisolm, Rogers' PCP, provided medical care for Rogers as early as November 29, 2017.  [Dkt. 30 at ¶ 64].  In March of 2020, Dr. Chisolm

determined Rogers' restrictions and limitations to be: "no lifting $\geq 5$; no walking $\geq 5$; no standing $\geq 5$ min; no sitting $\geq 20$ min; occasional keyboarding." [Dkt. 30 at ¶ 65].

As early as August 2019, Dr. Andrew Chapman, an orthopedic surgeon, documented that Rogers suffered mild tendinosis supraspinatus and infraspinatus, tearing of this labrum, rotator cuff tendinopathy, along with other issues. [Dkt. 30 at ¶ 55]. In September of 2019, Rogers received surgery on his shoulder, however, on December 30, 2019, Rogers' attending physician, Dr. Ferrante, a rheumatologist, documented that Rogers continued to experience "shoulder pain despite surgery." [Dkt. 30 at ¶¶ 56-58]. She also diagnosed him with "mixed connective tissue disease." [Dkt. 30 at ¶ 59]. She frequently noted Rogers' lack of physical stamina, concentration, and memory. [Dkt. 30 at ¶ 61]. In October of 2020, Ferrante included a diagnosis of discoid lupus and stated that "[p]rofound fatigue [was] his most limiting symptom," in addition to increased autoimmune disease activity. [Dkt. 30 at ¶ 62].

On October 15, 2021, Dr. Robert Tufo, a treating psychiatrist for Rogers since October 2019, concluded that Rogers could not work in any occupation. [Dkt. 30 at ¶ 66]. Tufo determined that "diseases made it impossible for [Rogers] to work [because] [m]uch of his day is consumed with bed rest and quiet isolation to control symptoms." [Dkt. 30 at 67].

Unum has not challenged the credentials of Rogers' attending physicians, but rather their conclusions that Rogers was unable to carry out the duties of his occupation based on the following arguments.

## 2. Unum Medical Consultants[4]

Unum argues that its medical consultants conducted extensive reviews, a physical exam, and addressed contrary opinions, making it reasonable to rely upon their respective conclusions. Rogers disagrees that they adequately addressed his attending physicians' recommendations and analyses. The final May 2022 determination includes short summaries from various Unum medical consultants, however, fails in most cases to provide specific reasons why Rogers' attending physicians' opinions are not well supported by medically acceptable clinical or diagnostic standards, and/or reasons why the opinions are inconsistent with other substantial evidence in the record, as required by its Policy. The Court found it necessary to read through the individual medical consultant reports in the administrative file to gauge whether the Policy was fulfilled. The medical consultant reports were not written "in a manner calculated to be understood by the participant" to say the least. The Court found the following according to its review.

**Dr. Scott Norris**

Unum medical consultant, Dr. Scott Norris, is certified in family, occupational and aerospace medicine, and licensed in Tennessee. [Dkt. 28-9 at 296]. Norris first reviewed Rogers' medical file in June of 2021 and again in March of 2022. In March of 2022, Norris reviewed the updated information roughly two months prior to Unum's final May 2022 determination letter, denying Rogers long-term disability. [Dkt. 30 at ¶ 30]. This information

---

[4] Defendants included an advisory opinion by the U.S. Department of Labor addressing whether medical consultants utilized in an insurance appeal must be licensed to practice in the state where the claimant received health benefit services or resides. [Dkt. 29 Exh. A at 1; Advisory Opinion 2005-16A (June 10, 2005)]. The Department concluded that, assuming the medical consultants were at least accredited in the United States (and its territories), 29 C.F.R. § 2569.503.1 is satisfied where the "fiduciary is a physician or other health care professional with appropriate training and experience in the field of medicine involved in the medical judgment, and that person is licensed . . . ." [Id. at 2]. This Court has held that the medical consultants are not required to be licensed in Massachusetts so long as they are licensed in the United States. See Abi-Aad v. Unum Group, No. 21-CV-11862, 2023 WL 2838357, at *14 (D. Mass. 2023) (The medical consultants at issue satisfy this requirement.)

included the "opinions of treating [attending physicians], the SSA determination, the

Rheumatology IME's findings, the recent Appeals Psychiatry review and the entirety of

information available in the file." [Dkt. 28-9 at 273]. He concluded that the updated information

(IME findings, SSA determination, attending physicians' opinions, for example) did not change

his prior conclusion that "the weight of the medical evidence did not support" restrictions or

limitations that would prevent Rogers from "performing full time light occupational activity []

continuously," from April 29, 2020 to August 20, 2020. [Dkt. 30 at ¶ 30]. It does appear that he

presented some support for his own conclusions and possibly points to some evidence in the

record that may be inconsistent with the attending physicians' overall conclusion. However,

there is little to no explanation provided as to why the specific attending physicians' opinions

were not well supported by medically acceptable clinical or diagnostic standards, as required by

Unum's Policy.

**Dr. Ronald Rapoport**

Unum medical consultant, Dr. Ronald Rapoport, is certified in internal medicine and

rheumatology, and licensed in Massachusetts. [Dkts. 30 at ¶ 23; 28-8 at 168]. As a part of

Rogers' appeal, on or around July 22, 2021, Dr. Rapoport completed a Rheumatology IME—a

specialty focused, physical examination. [Dkts. 28-8 at 167; 28-9 at 273]. He also reviewed

medical records during the period of February 14, 2020 through August 20, 2020 timeframe, to

include records from attending physician Ferrante. He did not, however, address any of the

attending physicians' conclusions, specifically to explain why Ferrante or others' opinions were

not well supported by medically acceptable clinical or diagnostic standards and inconsistent with

other substantial evidence in the record. Rapoport concluded that Rogers had the capacity to

"perform full-time, light work activity if his fatigue did not intervene excessively." [Dkt. 28-8 at

168].  Rapoport also emphasized that Rogers' description of his work duties appeared to exceed

what the designated description of "light work." [Id.].  He continues:

> Nonetheless, if the light work is the full description of what is considered his
> responsibility, then I feel he can do this the overwhelming majority of the time
> taking fatigue into consideration. The difficulty he has with manual dexterity and
> joint pain is clearly noted in the rheumatologist's office, and his diagnosis of
> mixed connective tissue disease . . . is clear without doubt.  I am sure that this
> rheumatologic condition is his main limiting factor.  If the claimant does have to
> lift items as heavy as 50 to 80 pounds, walk across a campus, and do repeated
> activities requiring use of tweezers and significant hand dexterity, then his history
> of joint pain may certainly interfere with what is going on. If it is not part of his
> responsibility, then I think he can clearly do what is described as light work.

[Id.].

Rapoport's review is the most thorough, especially since he administered a physical exam

or IME.  His statement that Rogers' performance was dependent upon whether he experienced

"excessive fatigue," however, seems to be a restriction and limiting factor in line with Ferrante's

concerns.  While his review is thorough, his findings do not necessarily contradict that of

Rogers' attending physicians, if not strengthens the limitations based on Rogers' fatigue.

**Dr. Peter Brown**

Unum medical consultant, Dr. Peter Brown, is certified in psychiatry and licensed in

Tennessee and Ontario.  [Dkt. 28-9 at 289].  On March 11, 2022, Brown determined after

reviewing Rogers' medical records that the restrictions and limitations provided by his attending

physicians were "overly restrictive."  [Id. at 281].  He determined—contrary to Rogers' attending

physicians Ferrante and Chisholm—that "the records reflected no significant change in health or

functional capacity since" Rogers last worked.  [Id. at 281].  The explanation provided was that

there were no medical records from Rogers' psychiatrist and the treating providers did not opine

about "work-related restrictions and limitations."  [Id.].  Brown also stated in the same review

that he reviewed Rogers' SSA file that contained medical records that "reflected treatment from

Dr. Tufo for anxiety disorder, panic disorder, Bipolar II disorder." [Id.].  Brown acknowledged that there were "time relevant," "BH" (behavioral health) medical records and a 2021 summary from Tufo outlining support for impairment.  [Id. at 282].  He notes, however, that these records reflecting Rogers' behavior health condition were dated September 2021 through October 2021 and were not considered during the first appeal review.  [Id. at 282].  Unum later obtained the records from Tufo.  They contained documented treatment as early as October 29, 2019, through June 29, 2021, within the elimination period considered by both Brown and Rapoport.  [See id. at 281, 391].  Because the records reflect conditions that implicate "social functioning, concentration, persistence, and pace," Brown notes that the records "should be evaluated to determine if records are supported of a BH impairment that would be subject to the mental illness limitation." [Id. at 282].

Brown conducted another review on March 14, 2022, and rejected Tufo's diagnosis of anxiety, panic, mood, and ADH disorders, and rejected his conclusion that "chronic pain and fatigue" precluded Rogers' functional capacity.  [Id. at 289].  Brown pointed to "intermittent . . . symptoms" and that Tufo failed to assert "restrictions or limitations due to a psychiatric condition." [Id.].

Unum's efforts to conduct a second review once it received additional medical records were reasonable and for this reason, Brown's analysis likely satisfies Unum's Policy for Tufo, only.  The report fails to specify, however, reasons why the other physicians' opinions were not well supported by medically acceptable clinical or diagnostic standards and were inconsistent with other substantial evidence in the record.

**Dr. Donna Kim**

Unum medical consultant, Dr. Donna Kim, is certified in family medicine and licensed in Maine.  [Dkt. 28-4 at 237].  She conducted a review of Rogers' file in December of 2020 and concluded that his records did not indicate any conditions warranting restrictions.  [Id. at 236]. She indicated that there had been no "significant change in health or functionality since the last day [] Rogers worked.  [Id. at 235].  The evaluation listed the restrictions and limitations concluded by Rogers' attending physicians Ferrente and Chisholm, and addressed them directly. [Id. at 235-36].  For example, Kim discussed that Ferrante's conclusion that his autoimmune disease was worsening, however, pointed to "complement levels" that were inconsistent with Ferrante's conclusion.  [Id. at 235].  She also noted the long period of time between medical visits and inconsistent follow up which was "not consistent . . . for an impairing condition."  [Id. at 236].  She discussed that contrary to claiming he is mentally incapable of working, during the same timeframe, Rogers stated that he "reads a lot."  [Id.].  The evaluation also noted that there were no medical records provided by Tufo to support his notes that Rogers suffered from anxiety, brain fog, and confusion. [Id.].  It is unclear whether Kim reviewed Tufo's records after they were later supplemented.  In terms of the analyses pertaining to the other attending physicians, her comments satisfy the requirement to show inconsistent records, however, does not appear to address why the opinions were not well supported, as required by the standard.

**Dr. Arlen Green**

Unum medical consultant, Dr. Arlen Green, is certified in physical medicine and rehabilitation and licensed in California.  [Dkt. 30 at ¶ 116].  In her December 2020 opinion, she wrote that she "agree[d] with the OSP opinion . . . that the sum of the available medical information in the file including the limited physical exam and diagnostic findings d[id] not

support that [Rogers] is precluded from full-time light occupational demands . . . ."  [Dkt. 28-4 at 249-50].  No further rational was provided to support why she concluded Rogers was fully capable of performing his duties, other than a brief summary of his duties.  The rest of the report summarized the opinions of other Unum consultants and Rogers' attending physicians.  There were no specific reasons why the attending physicians' opinions were not well supported by medically acceptable clinical or diagnostic standards and is inconsistent with other substantial evidence in the record, failing to meet the standard.

**Dr. Stephen Kirsch**

Unum medical consultant, Dr. Stephen Kirsch, is certified in family medicine and licensed in Maine.  [Dkt. 28-4 at 241-42].  On November 30, 2020, Kirsch reviewed Rogers' medical records and wrote that "it appears reasonable [that he] had the functional capacity to perform the physical and cognitive demands . . . full-time . . . as of February 14, 2020 and ongoing" [Dkt. 30 at ¶ 75].  Treating physician Dr. Noreen Ferrante and Dr. Chisolm disagreed with Kirsch's conclusion.  [Id. at ¶¶ 72, 76].  Kirsch noted that he disagreed with "the treatment intensity" and that Rogers' symptoms from the mixed connective tissue disorder could "wax and wane."  [Dkt. 28-4 at 241].  He also mentioned that Tufo did not specify any restrictions or limitations.  [Id.].  While his assessment did provide some analysis, aside from Tufo's opinion, there is little to no explanation as to why the other attending physicians' opinions were not well supported by medically acceptable clinical or diagnostic standards, failing to meet the standard.

**B.     Contrary Findings**

Rogers argues additional inconsistent findings and decisions by Unum and an outside agency indicate an abuse of discretion.

**1. Social Security Administration ("SSA")**

Unum's medical consultants reviewed and considered Rogers' SSA file and the SSA's determination to award Rogers social security benefits.  [Dkt. 28-9 at 282].  Unum argues that it reasonably addressed the social security determination and Rogers argues that the SSA standard is more rigorous and Unum's disregard of the SSA's conclusion was unreasonable.

The Social Security Administration granted disability benefits to Rogers in December of 2021 [Dkts. 30 at ¶ 50; 28-9 at 233].[5]  After reviewing Rogers' medical records, the SSA determined that his medical impairment was of such severity that it met the criteria of Medical Listing 14.09D.  [Dkt. 28-9 at 240].  Medical Listing 14.09D is the description for inflammatory arthritis, which includes at least two of the following symptoms: severe fatigue, fever, malaise, or involuntary weight loss.  [Id.].  The designation also includes at least one limitation of daily activities, maintaining social functioning or completing tasks in a timely manner due to a lack of concentration, persistence, or pace.  [Id. at 240].  After reviewing the decision as a part of Rogers' appeal, Unum distinguished the SSA decision from its own disability determination for reasons to include the following: the SSA did not identify or outline any limitations or restrictions placed on Rogers' activities or abilities; the SSA did not complete a physical residual functional capacities assessment; the SSA did not evaluate Rogers' claim vocationally; and the SSA stopped monitoring his progress once he met the requirements for inflammatory arthritis. [Dkts. 28-9 at 240-1].

---

[5] Plaintiff's Statement of Facts at [Dkt. 30 at ¶ 50] cite to IX, p. 3731 in the administrative record that does not indicate whether or not the SSA benefits were provided.  The correct citation to the administrative record is IX, p. 3738 or [Dkt. 28-9 at 240] indicating "SSA approved this claim based on their determination that claimant's medical impairment was of such severity that it [m]et the criteria . . . ." Defendants however do not dispute social security benefits were provided.  [See Dkt. 30 at ¶ 50].

Social Security benefits decisions "might be relevant to an insurer's eligibility determination," however, it is not owed controlling weight, nor are they binding.  Pari-Fasano v. ITT Hartford Life Acc. & Ins. Co., 230 F.3d 415, 420 (1st Cir. 2000).  Generally, the criteria for determining whether an applicant is provided SSA benefits differs from those of insurance companies.  Id.  Unum's medical consultants conducted additional medical reviews due to the SSA's conclusion, and for the differences discussed above, did not concur with its outcome. Rogers responds that while the SSA did not evaluate his claim vocationally, its determination that Rogers met the "Listing of Impairments" means that the severity of the impairment has reached a severity that prevented Rogers from engaging in any "gainful activity."  See Soc. Sec. Admin., Listing of Impairments – Adult Listings (Part A), **https://www.ssa.gov/disability/professionals/bluebook/AdultListings.htm** (last visited Mar. 29, 2024).  Rogers cites to cases where the facts establish that the SSA's measurement is more rigorous than Unum's.  See U.S. ex rel. Loughren v. Unum Grp., 613 F.3d 300, 303-4 (1st Cir. 2010) (discussing the facts established at trial indicating that the SSA evaluation of performance capability to be more rigorous than Unum's process).  The Court is not sitting in a position to determine whether the SSA standard here is more rigorous than Unum, based on what is in the record.  After receiving the SSA determination, Unum took additional steps to address the content of the SSA decision at length, and conducted subsequent reviews by its medical consultants Brown and Norris.  Accordingly, its actions with regard to the SSA were reasonable.

### 2.  FMLA

Rogers argues that Unum's "administration" of FMLA leave is evidence that it abused its discretion.  [Dkt. 26 at 2].  On July 2, 2021, a letter from Unum ADA Support Center addressed to Rogers stated that Rogers' provider confirmed on June 24, 2021, that "they were unable to

provide any certainty around when [Rogers] may return to work or whether [Rogers would] be capable of returning to work." [Dkts. 30 at ¶ 43; 28-8 at 275]. Unum's legal review indicated that neither Rogers "nor [his] physician(s) have been able to provide any certainty around [Rogers] ability to return to work." [Dkt. 28-8 at 275]. Its legal review and the medical documentation led to Unum's conclusion that Rogers' need for leave became "indefinite"—the point when an "employee cannot say whether or when they will be able to return to work at all," removing the requirement for a reasonable accommodation [Dkt. 30 at ¶ 44]—and accordingly, his ADA file was placed in an inactive status. [Dkts. 28-8 at 275; 30 at ¶ 43].

Unum does not offer any explanation for the FMLA determination or attempt to distinguish it from the conclusions reached in the long-term disability process. The Court has little information indicating what standards or processes that apply in the FMLA matter to compare it to the long-term disability process. The FMLA decision appears to include a legal review as well as a review of medical documents, whereas Unum's denial of long-term disability appeared to be based on the conclusions of Unum's medical consultants. The Court is also unaware whether the FMLA reviewers had access to the Unum medical consultants' conclusions. Nevertheless, at the least, an Unum ADA Support department found that Rogers' need for leave was "indefinite" based on his medical files, which is a stark contrast to the long-term disability conclusion that Rogers was capable of carrying out his full-time duties. The inconsistency and failure to address this issue, suggests its decision was arbitrary.

### 3. Short-term Disability

Rogers argues that Unum's decision to grant him short-term benefits for the same timeframe that Unum medical consultants found he was fully capable or mostly capable of carrying out the duties of his occupation demonstrates an abuse of discretion. [Dkt. 31 at 5]. He

acknowledges that he was not automatically owed long-term benefits, however, nothing in the record indicated Rogers' health conditions were improving after he was awarded short-term benefits.  [Id. at 4].  Unum argues, and both parties seem to agree, that short-term benefits do not entitle Rogers to long-term benefits.  [Dkt. 29 at 11].  Unum points to the various differences between the two policies in terms of application requirements and pay.  [Id. at 11-12].

There is no disagreement that the process of determining short-term benefits and long-term benefits may differ, and the acquisition of one does not guarantee the other.  See Pini v. First Unum Life Ins. Co., 981 F.Supp.2d 386, 413 (W.D. Pa. 2013) (holding that denying "long-term disability benefits cannot be reasonably characterized as an abuse of discretion merely because short-term disability benefits had previously been awarded.").  However, Unum's determination that Rogers was disabled during that same timeframe it subsequently found he was fully able with no indication in the record that his conditions improved, is relevant evidence that weighs against the administrator.  See Tretola v. First Unum Life Ins. Co., No. 13 Civ. 231, 2015 WL 509288, at *22 (S.D.N.Y. Feb. 6, 2015) ("The fact that [the claimant] had been judged to be disabled . . . is relevant evidence . . . ."); see also Alfano v. CIGNA Life Ins. Co. of New York, No. 07 Civ. 9961, 2009 WL 222351, at *14 (S.D.N.Y. Jan. 30, 2009) ("[A] 'reversal in policy preceded by no significant change in [the claimant's] physical condition' will weigh against the administrator . . . ." (quoting Connors v. Conn. Gen. Life Ins. Co., 272 F.3d 127 (2d Cir. 2001))).

## C.  Totality of the Record

Unum took several steps to consider the various pieces of evidence that Rogers submitted in support of his long-term disability application, to include its medical reviews of relevant records, an IME examination, a review of occupational reports, and the SSA determination regarding Rogers' disability.  On the other hand, there is substantial evidence supporting that

Rogers was disabled during the relevant period, to the extent he could not carry out his duties. Unum and the SSA deemed Rogers disabled, the Unum disability office determined that Rogers required indefinite leave for the purpose of FMLA, and, importantly, nothing in the record seems to indicate that Rogers' conditions were improving—all relevant evidence as to whether Unum's overall decision was arbitrary and capricious.  The question becomes what to do with the relevant evidence.

Generally, "it is not for a court to determine precisely how much weight [an insurer] should have accorded [a particular piece of evidence] in its overall decision." Tsoulas v. Liberty Life Assur. Co. of Bos., 454 F.3d 69, 77 (1st Cir. 2006) (alteration in original) (quoting Gannon v. Metro. Life Ins. Co., 360 F.3d 211, 214 (1st Cir. 2004).  The focus is still whether "the administrator's decision must be upheld if it is reasoned and supported by substantial evidence," or evidence that "is reasonably sufficient to support a conclusion . . . ." Gannon, 360 F.3d at 213 (citing Vlass, 244 F.3d at 30).  Unum has provided evidence that reasonably supports its conclusions as to the contradictory findings of the SSA, and the medium versus light work dispute with Jellenek's report.  It ignored the FMLA evidence.

As for Rogers' attending physicians, for the reasons already stated regarding the RSA and Unum's Policy, this Court is required to examine weight regarding the attending physicians as a matter of compliance: Unum's failure to follow its own policies and procedures would be arbitrary and capricious.  The Court is less convinced that Unum, and particularly the May 2022 determination letter, explained why each attending physician's medical opinion was "not well supported by medically acceptable clinical or diagnostic standards and is inconsistent with other substantial evidence in the record."  [Dkt. 30 at ¶ 104].  Unum must satisfy these criteria before it can reject Rogers' attending physicians' opinions, and by its own standard, it is insufficient to

simply provide support for its own medical consultant's conclusions.  While the Court did its best to decipher and translate acronyms, scratch notes, and shorthand, within the medical consultant reviews, it should not have to do so to evaluate whether Unum complied.  The proper support should have been readily available and clearly stated in the final determination letter, not just for ease for the courts, but also as a matter of notice for the benefits applicant.  See Glista, 378 F.3d at 130 (the applicant should be provided reasons in writing "in a manner calculated to be understood by the participant").

Accordingly, at this juncture, the Court requires more information to determine whether Unum's decision to deny Rogers long-term disability, especially in light of the Policy, was arbitrary and capricious.  Specifically, the Court requires the plan administrator produce an amended final determination letter that includes specific reasons why each attending physician's opinion is not well supported by medically acceptable clinical or diagnostic standards or is inconsistent with other substantial evidence in the record.  Additionally, the letter must address the FMLA finding.

IV.     **CONCLUSION**

For the foregoing reasons, both parties' Motions [Dkts. 22, 25] are **DENIED WITHOUT PREJUDICE** for the reasons previously stated.

**SO ORDERED.**

Dated: March 31, 2024                              /s/ Angel Kelley
                                                  Hon. Angel Kelley
                                                  United States District Judge